## Good v. Kantorik

462

C.P. of Fayette County, no. 2181 of 2001, G.D.

*Ernest DeHaas,* for plaintiff.
*Marvin Snyder,* for defendant.

SOLOMON, *J.,* April 11, 2003—

## BACKGROUND

This is a motion for summary judgment filed on behalf of the plaintiff, Thomas T. Good. The plaintiff brought suit against the defendant, Charles F. Kantorik, alleging that the defendant has failed to comply with the terms of a sales agreement between the parties. The parties agree that they entered into an agreement on November 2, 1987, for the sale of the plaintiff's accounting practice to the defendant, and that this was the only binding agreement between them. In his complaint, that plaintiff alleges that the agreement was breached by reason of the defendant's failure to pay amounts due under the agreement. By way of answer and new matter, the de-

fendant has asserted that the agreement contains a warranty provision in which it is warranted that the "accounting practice [grossed] at least $65,000 per year."

The defendant also asserts that after he purchased the practice, he discovered that it was in fact not grossing $65,000 per year, and that, under the terms of the agreement, he was entitled to make sporadic payments. Further, in 1991, the defendant made no payments for the entire year. After 1991, the defendant made sporadic payments up until May 5, 2000, the date of his last payment.

In his motion for summary judgment, the plaintiff contends that it is clear from the unambiguous terms of the contract that a reduction in sale price was only to occur if the accounting practice lost any major clients.

## DISCUSSION

Motions for summary judgment are governed by Pa.R.C.P. 1035.2, which rule provides:

"After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

"(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would

require the issues to be submitted to a jury." Pa.R.C.P. 1035.2.

Summary judgment may only be invoked if the record shows there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Young v. Eastern Engineering and Elevator Co. Inc.,* 381 Pa. Super. 428, 554 A.2d 77 (1989). It is not the function of the court ruling on a motion for summary judgment to weigh evidence and to determine the truth of the matter. *Keenheel v. Pennsylvania Securities Commission,* 134 Pa. Commw. 494, 579 A.2d 1358 (1990). Further, the court must examine the record in the light most favorable to the non-moving party, *Sebelin v. Yamaha Motor Corp.,* 705 A.2d 904 (Pa. Super. 1998), and resolve any doubt in his favor. *Swartley v. Hoffner,* 734 A.2d 915 (Pa. Super. 1999); *Doe v. Philadelphia Community Health Alternatives AIDS Task Force,* 745 A.2d 25 (Pa. Super. 2000), *alloc. granted in part,* 563 Pa. 125, 758 A.2d 166 (2000), *affirmed,* 564 Pa. 264, 767 A.2d 548 (2001). Additionally, the non-moving party may respond to the motion by relying solely on an affidavit to create a genuine issue of material fact, *i.e.,* a credibility determination for the jury. *Gruenwald v. Advanced Computer Applications Inc.,* 730 A.2d 1004, 1009 (Pa. Super. 1999). With these precedents in mind, we now consider the motion of the plaintiff for summary judgment.

Instantly, the plaintiff asserts that there is no material issue of fact as to the issue of the terms of the agreement and that by virtue of the defendant having failed to pay the amount due, he is entitled to judgment as a matter of law. The plaintiff also asserts that, under the agreement,

the only provision which allowed for any reduction in the amount due would only take effect if any of the "major clients" of the practice departed.

In response to the motion for summary judgment, the defendant has filed an affidavit which states that after he took control of the accounting practice, it grossed approximately $50,115.55. Under his interpretation of the warranty provision of the agreement, this constituted a breach by the plaintiff, thereby allowing the defendant to reduce the agreed upon purchase price of the accounting practice.

Thus, the initial determination by this court must be one of contract interpretation, since the interpretation of an agreement is a question of law for the court. Pa.R.C.P. 1035, 42 Pa.C.S. Where the parties disagree as to the meaning of a contract's terms, a court should attempt to interpret the contract using the standard rules of interpretation. *Cohen v. McLafferty,* 53 D.&C.4th 155 (Philadelphia Cty. 2001), citing *Banks Engineering Co. v. Polons,* 561 Pa. 638, 644 n.4, 752 A.2d 883, 886 n.4 (2000). In general, "a clear and unambiguous contract provision must be given its plain meaning unless to do so would be contrary to a clearly expressed public policy. *Insurance Co. of Evanston v. Bowers,* 758 A.2d 213, 220 (Pa. Super. 2000) citing, *Antanovich v. Allstate Insurance Co.,* 507 Pa. 68, 76, 488 A.2d 571, 575 (1985).

Under Pennsylvania law, a contract is ambiguous "when a contract provision is reasonably susceptible to more than one meaning." *West Conshohocken Restaurant Associates Inc. v. Flanigan,* 737 A.2d 1245, 1248 (Pa. Super. 1999). A court must not "distort the meaning of the language or resort to a strained contrivance in or-

der to find an ambiguity." *Madison Construction Co. v. Harleysville Mutual Insurance Co.,* 557 Pa. 595, 606, 735 A.2d 100, 106 (1999) (the fact that the parties have different interpretations of a contract does not render the contract ambiguous). If no ambiguities are found, the court may then regard the interpretation to be a question of law. *Lapio v. Robbins,* 729 A.2d 1229, 1232 (Pa. Super. 1999). Furthermore, it is appropriate to grant summary judgment where the court finds the contract terms to be clear and unambiguous and where there is absence of substantial factual disputes. *Henry v. First Federal Savings & Loan Association of Greene County,* 313 Pa. Super. 128, 134-35, 459 A.2d 772, 775 (1983).

An examination of the instant agreement reveals no ambiguities. Specifically, the provision in question states,

"Thomas T. Good hereby warrants that his accounting practice grosses at least $65,000 per year. Adjustment of the sales price will be enacted if any of the major clients depart. Major clients are those whose yearly billings exceed 10 percent of the sales price or $6,500.

"In the event of departing major clients a reduction in the sales price will be necessary. That adjustment will be computed as follows:

"If a major client departs during the first year the contract will reduce by the annual billing rate of the client.

"During the second year, a reduction of 80 percent of the client annual billing.

"Third year a 60 percent reduction.

"Fourth year a 40 percent reduction.

"Fifth year a 20 percent reduction." (Plaintiff's motion for summary judgment, exhibit A.)

Thus, it is clear from the plain language of the contract that the only way a reduction in the agreed-upon sales price could occur was if any of the "major clients" were lost. Therefore, the correct remedy to be pursued by the defendant would have been to sue under a theory of breach of warranty, not by refusing to pay the scheduled payments under the agreement.

Simply because the parties have different interpretations of the provisions of a contract provision does not make the agreement ambiguous. *Lapio v. Robbins, supra.* Thus, since the defendant has admitted that he did not make the payments under the terms of the contract, he is in breach of the agreement as a matter of law.

However, the defendant also contends that the plaintiff's cause of action for breach of contract is barred by the statute of limitations. Under Pennsylvania law, specifically 42 Pa.C.S. §5525, the statute of limitations for a breach of contract claim is four years.

Here, it is not disputed that the defendant failed to make agreed-upon contractual payments beginning in 1991, and then made sporadic payments until May 5, 2000, when he made his last payment. The plaintiff argues that, under *Packer Society Hill Travel Agency Inc. v. Presbyterian University of Pennsylvania Medical Center,* 430 Pa. Super. 625, 635 A.2d 649 (1993), the date to determine when the statute of limitations begins to run is when the last payment was made by the defendant. Thus, according to the plaintiff, the statute of limitations began to run on May 5, 2000, the last date upon which the defendant made any payments under the agreement.

The defendant contends, in the alternative, that if the court finds him in breach of contract, then the statute began to run when he failed to make payments to the plaintiff in accordance with the terms of the agreement. Thus, according to the defendant, the statute of limitations began to run no later than 1991, when the defendant went an entire year without making any payments to the plaintiff. Hence, we must determine when the statute of limitations began to run with regard to this agreement, and whether any action taken by either of the parties tolled the statute.

As stated, *supra,* it is the position of the plaintiff that the statute of limitations begins to run on the date of the last payment under the agreement. While partially true as a statement of law, it is not applicable in all situations, nor is it a complete statement of the law. Specifically, in *Packer, supra,* a travel agency, the plaintiff, brought action against a client, the defendant, for breach of a contract executed by the parties on April 10, 1985. The plaintiff commenced its action on November 22, 1991, alleging that the defendant made periodic payments, but not in accord with the terms of the contract, and then ceased all payments after January 13, 1986. The court in *Packer,* in applying the four-year statute of limitations, held that since it was not disputed that the defendant stopped making payments on January 13, 1986, the court could use that date, as a matter of law, to determine that the statute of limitations had run on the plaintiff's action.

As we can see, the court, in *Packer,* did not hold that the date to determine the accrual of the statute of limitations was the last date of payment. It simply used the

date of last payment in the specific set of facts before it because this date was not disputed. This allowed the court to use this date as a matter of law and, even by utilizing this later date, clearly demonstrated that the statute of limitations precluded the plaintiff's cause of action.

The law is clear that the statute of limitations begins to run on a claim from the time the cause of action accrues. *S.T. Hudson Engineers Inc. v. Camden Hotel Development Associates,* 747 A.2d 931 (Pa. Super. 2000). The right to recover damages for the breach of a contract accrues as soon as the contract is broken, *Selig v. Philadelphia Title Insurance Co.,* 380 Pa. 264, 111 A.2d 147 (1955), or, in other words, when one has the right to institute suit. *Bell v. Brady,* 346 Pa. 666, 321 A.2d 547 (1943). A "breach of contract is a nonperformance of any contractual duty of immediate performance." *Barnes v. McKellar,* 434 Pa. Super. 597, 608, 644 A.2d 770, 775 (1994), citing *Camenisch v. Allen,* 158 Pa. Super. 174, 177, 44 A.2d 309, 310 (1945). Thus, in an action for breach of contract, the statute of limitations begins to run from the moment a party to the contract breaches. *Romeo & Sons Inc. v. P.C. Yezbak & Son Inc.,* 539 Pa. 390, 652 A.2d 830 (1995); *Packer Society Hill Travel Agency Inc. v. Presbyterian University of Pennsylvania Medical Center, supra.* When the contract is continuing, the statute of limitations runs from the time when the breach occurs or when the contract is in some way terminated. *S.T. Hudson Engineers Inc. v. Camden Hotel Development Assocs., supra.*

However, in fairness to the "would-be" plaintiff who foregoes litigation based on a promise by the breaching party to pay on a contract, the courts recognize an

"acknowledgement doctrine." The "acknowledgement doctrine" provides that a statute of limitations may be tolled, or its bar removed, by a promise to pay a debt. *S.T. Hudson Engineers Inc. v. Camden Hotel Development Assocs., supra; Huntingdon Finance Corp. v. Newtown Artesian Water Co.,* 442 Pa. Super. 406, 659 A.2d 1052 (1995). For this doctrine to apply, or to be sufficient to toll the statute, there must be a clear, distinct, and unequivocal acknowledgment of a debt as an existing obligation, such as is consistent with a promise to pay. *S.T. Hudson Engineers Inc. v. Camden Hotel Development Assocs., supra; Gurenlian v. Gurenlian,* 407 Pa. Super. 102, 114, 595 A.2d 145, 151 (1991). As a result, where such acknowledgment is given, the statute of limitations for a non-breaching party's claim in a contract action is tolled up, and until, either (1) the breaching party has breached the express or implied agreement to pay, or (2) when the parties sever their relationship. See *S.T. Hudson Engineers Inc. v. Camden Hotel Development Assocs., supra;* see also, *Gurenlian v. Gurenlian, supra.*

Instantly, as of August 23, 1996, the defendant clearly and unequivocally admitted, via a letter, that he owed $23,630.39. (Motion exhibit E, and answers to requests for admissions.) Specifically, the letter stated:

"Tom,

"Enclosed are five checks dated to August 23, 1996. All payments are interest except the last check which is $500. principle + 178 int. I'm showing a bal. Due at August 9, 1996 of $24,130.39. The August 23, 1995 payment will reduce principle $500.—and the principle after the August 23 payment will be $23,630.39.

"This is a preliminary figure but should be very near accurate. I will send you my schedule after I double check the computation. I can't do it today but schedule will follow within a week.

"I will send you a monthly check of from $500. to $1000.—a month, or more in tax season plus monthly interest. Nov. Dec. + Jan. are really tight months for me.

"You will have a hard time trying to call me because I'm generally out on field work until late October. You'd be better off writing.

"P.O. Box 966

"Mt. Pleasant PA 15666"

An examination of this letter reveals that the defendant clearly and unequivocally admitted that he owed the plaintiff $23,630.39, as of August 23, 1996. From the record, it is also agreed upon that the defendant made payments under the agreement until May 5, 2000, the date on which the defendant admits he stopped making payments. Thus, under the "acknowledgment doctrine," we must find, as a matter of law, that the defendant severed the agreement as of May 5, 2000, and that the statute of limitations began to run from the date the next payment was due under the agreement. Hence, as in *Packer*, taking the last undisputed date, May 5, 2000, and finding from the record that the plaintiff's action was commenced on October 2, 2001, this action is not barred by the applicable four-year statute of limitations for contract actions.

Therefore, by reason of the foregoing, we will grant the motion for summary judgment filed by the plaintiff.

## ORDER

And now, April 11, 2003, it is hereby ordered and decreed that the motion of the plaintiff for summary judgment is granted as to liability, and denied as to the damages due the plaintiff after the payments admitted to be made by the defendant after August 23, 1996, are applied to interest and principal.